UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Douglas A. Kelley, in his capacity as the court-appointed Receiver of Thomas Joseph Petters; Deanna Coleman aka Deanna Munson; Larry Reynolds, and/or dba Nationwide International Resources aka NIR, Thomas J. Petters Family Foundation,<br><br>        Plaintiff,<br><br>vs.<br><br>College of Saint Benedict,<br><br>        Defendant. | Court File No. _____<br><br>**COMPLAINT** |

Douglas A. Kelley (the "Plaintiff" or "Receiver"), in his capacity as the court-appointed Receiver of the above captioned individuals and entities, by and through his legal counsel, Lindquist & Vennum P.L.L.P., as and for his Complaint against defendant College of Saint Benedict (the "Defendant"), states and alleges as follows:

## I. INTRODUCTION

1. On February 25, 2010, Defendant and Receiver entered into a tolling agreement, as subsequently amended by the parties, which tolled any and all time limitations applicable to the transfers described in this Complaint (as subsequently amended by the parties, the "Tolling Agreement"). The Tolling Agreement is currently effective between Defendant and Receiver.

2. Pursuant to the Tolling Agreement, the Receiver and the Defendant agreed that at any time, the Receiver "may commence an action against the [Defendant] and that any and all claims or defenses asserted by the Receiver, . . . or the [Defendant] shall be deemed to have been asserted prior to the execution date of the Agreement."

3. As set forth in the Tolling Agreement, the Defendant expressly waived the right to raise or invoke any limitations defense during the tolling period that the Defendant did not have prior to the commencement of the tolling period. The Defendant expressly reserved only "the right to assert any limitations defense that the [Defendant] had prior to the commencement of the [t]olling [p]eriod."

## II. NATURE OF THE PROCEEDING

4. On October 3, 2008, upon application by the United States of America and pursuant to 18 U.S.C. § 1345, the United States District Court for the District of Minnesota (the "District Court") placed, among others, Thomas J. Petters ("Petters"), Deanna Coleman ("Coleman"), Larry Reynolds ("Reynolds"), Nationwide International Resources ("Nationwide") and any other entities owned and/or controlled by, among others, Petters into civil receivership (Court File No. 08-CV-5348) (the "Receivership Action"). Petters, Coleman, Reynolds, and Nationwide are collectively referred to herein as the "Receivership Individuals."

5. By Order of the District Court in the Receivership Action on October 6, 2008, as amended in that certain Second Amended Order for Entry of Preliminary Injunction, Appointment of Receiver, and Other Equitable Relief (the "Receivership Order"), dated December 8, 2008, the District Court duly appointed Douglas A. Kelley, as the equity receiver for the Receivership Individuals and the Family Foundation (the "Receivership Order") (Court File No. 08-CV-5348) [Docket No. 127].

6. The Thomas J. Petters Family Foundation (the "Family Foundation") is a non-profit corporation organized in the State of Minnesota that is wholly owned and controlled by Petters. Pursuant to the Receivership Order, the Receiver is also appointed for the Family Foundation.

DOCS-#3665137-v2

7. At all times relevant herein, the Family Foundation was owned and controlled by Petters. Petters owned, dominated and controlled the Family Foundation as a mere corporate shell to assist in perpetrating a massive Ponzi scheme. Petters' sole income and source of funds resulted from the perpetration of a Ponzi scheme, as described below. Furthermore, the sole income and source of funds of the Family Foundation was Petters' individual and corporate accounts.

8. The Family Foundation is a non-profit corporation organized under the laws of the State of Minnesota by Petters for the purpose of transferring proceeds of the Ponzi scheme to schools, universities and other charitable organizations. The Family Foundation was merely a façade for Petters' individual dealings and provided a vehicle for Petters to display a false persona of wealth, success and altruism that allowed Petters to gain the additional credibility he required to induce more victims to invest money into his Ponzi scheme.

9. As the court-appointed Receiver, Mr. Kelley serves as an agent of the District Court and in that capacity possesses exclusive custody, control and possession of the property, assets and estates of the Receivership Individuals and the Family Foundation. Upon appointment, the Receiver caused the cessation of all fraudulent activity, as described below and set forth herein.

10. The Receiver brings this action against Defendant to recover fraudulent transfers of property by the Receivership Individuals and the Family Foundation to Defendant, to recover funds that unjustly enriched the Defendant, and to impose a constructive trust on stolen funds received by the Defendant.

11. The Receiver seeks to recover such transfers and preserve the property of the Receivership Individuals and the Family Foundation for the benefit of individuals and

organizations defrauded by the orchestration of a massive Ponzi scheme by, among other entities and individuals, the Receivership Individuals and the Family Foundation.

12.     On September 14, 2010, the United States District Court for the District of Minnesota approved a Coordination Agreement entered into among the Receiver, Douglas A. Kelly as Chapter 11 Trustee of the jointly-administered estates Petters Company, Inc. et al., John R. Stoebner, Chapter 7 Trustee of Polaroid Co., and the United States (the "Coordination Agreement"). Pursuant to the Coordination Agreement the United States and the Receiver agreed that the net funds recovered by the Receiver from charitable donations shall be transferred to the United States.

### III.    PARTIES

13.     Pursuant to the Receivership Order, Plaintiff Douglas A. Kelley was appointed Receiver of the Receivership Individuals and the Family Foundation. The Receivership Order vests the Receiver with the full power of an equity receiver and requires the Receiver to "[t]ake exclusive immediate custody, control, and possession of all property, assets, and estates belonging to or in the possession, custody, or under the control of Defendants, wherever situated." (Receivership Order at 13.) "The Receiver shall have full power to . . . sue for, collect, receive, take in possession . . . all assets of Defendants." (*Id.*)

14.     Defendant College of St. Benedict is a non-profit corporation organized under the laws of the State of Minnesota with its principal place of business located at 37 South College Avenue, St. Joseph, MN 56374. Defendant is an initial transferee of the fraudulent or otherwise avoidable transfers alleged in this Complaint, or subsequent transferee of any initial transferee of such transfers.

## IV.  JURISDICTION, VENUE AND STANDING

15. The Receiver has the capacity to commence this action pursuant to the Receivership Order and 28 U.S.C. §§ 754 and 1692.

16. This Court has ancillary jurisdiction over this matter as it is an action instituted by a federal equity receiver to execute his duties as set forth in the Receivership Order. This action seeks to accomplish the ends sought by the civil case pursuant to 18 U.S.C. § 1345, in which the Receiver was appointed. *See United States v. Petters, et al.*, Court File No. 08-cv-5348 (D. Minn.).

17. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because, among other things, the Defendant resides in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

18. Venue for this action is also proper in this District because:

    a) this action is ancillary to the United States' proceedings pending in this District;

    b) the Receiver was appointed in this District;

    c) the Receivership Individuals and Family Foundation made all of the charitable contributions at issue in this action from this District.

## V.  STATEMENT OF FACTS

### The Ponzi Scheme

19. This case arises from a massive fraud and Ponzi scheme designed and orchestrated principally by Petters, Coleman, and Robert White ("White"). Petters operated the Ponzi scheme with the assistance of, among others, Coleman and White from approximately 1993 through the date of Petters' arrest by federal agents in September 2008. Petters, Coleman,

and White laundered what is estimated to be an amount in excess of $40 billion through Petters Company, Inc. ("PCI"), Petters Group Worldwide, LLC ("PGW"), and other affiliated entities.

20. Petters, Coleman and White represented to various investors that the business of PCI involved the purchase and sale of goods to discount wholesalers such as Costco, Sam's Club, and B.J.'s Wholesale Club and the purchase-order financing of those transactions.

21. To obtain many of the investors in the Ponzi scheme, Petters, Coleman, and White portrayed PCI or an affiliate of PCI as a middleman that purchased consumer electronic goods or other goods from wholesalers and resold the merchandise to large, "big box" retailers such as Costco, Sam's Club and B.J.'s Wholesale Club. Petters, Coleman, and White fabricated the documents necessary to recruit investors into the Ponzi scheme. Petters, Coleman, and White prepared and utilized fabricated documents that were represented to investors to be purchase orders and related documents. The fabricated documents typically included: (1) purchase orders from retailers to PCI purportedly ordering electronic goods; (2) purchase orders from PCI to suppliers purportedly ordering electronic goods, and (3) false invoices. Petters, Coleman, and White fabricated the quantity and prices on these documents to "create" the false appearance that the purported transactions actually resulted in profit.

22. The investors typically would wire their funds to PCI or an entity affiliated with PCI, who would then forward the funds to one of two vendors; these vendors were either Nationwide International Resources ("Nationwide") which was owned and operated by Reynolds or Enchanted Buying Company ("Enchanted") which was owned and operated by Michael Catain ("Catain"). Instead of purchasing any goods, Nationwide (Reynolds) and Enchanted (Catain)—in cooperation with Petters, Coleman, and White—fraudulently rerouted the funds

6

back to PCI. Reynolds and Catain retained millions of dollars of fraud proceeds as commissions for rerouting funds back to Petters, Coleman, and White at PCI.

23. Petters, Coleman, and White then caused those funds to be transferred to affiliated entities who repaid earlier investors, caused those funds to be transferred to investors directly, and made multiple donations to various charities, including the Defendant. In addition, Petters, Coleman, and White received, as proceeds of the fraud, millions of dollars in the form of salaries, bonuses, and looted funds.

24. Earlier investors were repaid with more recent investors money which kept the Ponzi scheme alive.

25. Petters, directly or through the companies that he owned and operated, and the Receivership Individuals and the Family Foundation, gave money (which was the principal investment of victims of the Ponzi Scheme) to universities, schools and other charitable organizations, such as the Defendant, that was not his to give. The Transfers to universities, schools and other charities were made as part of the Ponzi Scheme to impress existing and future investors, to add credibility to the scheme and to convey that Petters, PCI and PGW were trustworthy, impressive and profitable.

26. On December 1, 2008, Petters was indicted by a Federal Grand Jury in the District of Minnesota that charged him with 20 separate counts of mail and wire fraud, money laundering and conspiracy to commit mail and wire fraud and money laundering in connection with the perpetration of the Ponzi scheme.

27. On December 2, 2009, a jury in the United States District Court of the District of Minnesota found Petters guilty of all counts charged in a superseding indictment.

DOCS-#3665137-v2

28. At various times during the course of the Ponzi Scheme, Petters was assisted in the operation of the scheme by numerous individuals, including, but not limited to, Coleman, and Reynolds.

29. In 2008, Coleman, Reynolds, White and Catain each pleaded guilty to various crimes directly arising from, and connected to, the perpetration of the Ponzi Scheme and their affiliation with Petters and entities that he owned and operated to further the Ponzi scheme.

30. The Receivership Individuals and the Family Foundation incurred obligations, including civil liability, restitution, and forfeiture, as a result of their receipt of millions of dollars of stolen funds which were the product of a fraud perpetrated by them. The Receivership Individuals and the Family Foundation incurred debts beyond their ability to pay, and the obligations rendered them insolvent and left them with unreasonably small capital.

31. The Receivership Individuals' and the Family Foundation's Fraudulent Transfers, as defined below, in the form of charitable contributions to Defendant and other charities and non-profit entities were intended, among other things, to create the appearance of success and a continuing profitable enterprise on behalf of Petters, Coleman, Reynolds, Nationwide, Catain, Enchanted, PCI, PGW, the other multitude of entities created by Petters.

32. Petters, with the assistance of Coleman, Reynolds, White, Catain and others, completely controlled and exercised adverse domination over PCI, PGW and other entities owned and operated by Petters at all times relevant herein, until the Receiver was appointed and placed in control of these entities.

33. Petters, as the owner, officer and director of PCI and PGW, was a fiduciary of those entities and had a duty to disclose the fraudulent activities alleged in this Complaint.

Petters in violation of his fiduciary duty did not disclose the fraudulent activities to current or prospective investors and other creditors of PCI, PGW or other related entities.

34. Petters, and others, fraudulently and intentionally concealed the ongoing fraud in an effort to hinder and delay authorities and other current and prospective investors and other creditors of PCI, PGW and other entities from discovering the fraud.

35. The concealment of the fraud, whether by Petters' silence, by the fraudulent, intentional concealment of the facts constituting the fraud or by the adverse domination of PCI, PGW and other debtor entities by Petters, prevented the discovery of the on-going fraud until the Receiver was appointed and placed in control of the entities and the Trustee was able to discover facts constituting the fraud alleged in this Complaint.

36. The Receiver has acted diligently to discover facts constituting the fraud alleged in this Complaint.

37. Any temporal limitations, statutory or otherwise, on the Receiver's ability to bring the causes of action set forth below are tolled by, among other things, Petters' breach of fiduciary duty in failing to disclose the fraud, the actions of Petters, or Petters and his associates, in fraudulently and intentionally concealing the fraud, or the adverse domination of PCI, PGW and other debtor entities by Petters, or Petters and his associates, until the appointment of the Receiver.

The Fraudulent Transfers

38. On or about January 31, 2003, Petters provided a $3,000,000 pledge to Defendant to name the auditorium in the Benedicta Arts Center after individuals in the Petters family, specifically, Tom Petters' parents (the "Pledge"). Petters agreed to pay the $3,000,000 pledge

in bi-annual payments of $500,000. In effect, Petters "pledged" funds to Defendant that he either stole, or would steal, from investors in the Ponzi Scheme.

39.  On February 6, 2003, Petters made a transfer to Defendant in the amount of $250,000 (the "Petters Transfer").

40.  Beginning on March 3, 2004, and continuing through July 18, 2006, the Family Foundation made transfers to Defendant in the aggregate amount of $1,250,000 (the "Family Foundation Transfers"), as follows:

| Date | Transferor | Amount |
| --- | --- | --- |
| 3/3/2004 | Thomas J. Petters Family Foundation | $750,000.00 |
| 12/6/2004 | Thomas J. Petters Family Foundation | $250,000.00 |
| 7/18/2006 | Thomas J. Petters Family Foundation | $250,000.00 |

41.  On June 14, 2006, on information and belief, either Petters or the Family Foundation made a transfer to Defendant in the amount of $250,000.

42.  On information and belief, prior to December 4, 2006, an additional $250,000 transfer was made by Petters or the Family Foundation to Defendant.

43.  On information and belief, as of December 4, 2006, the aggregate amount of funds transferred by the Receivership Individuals and the Family Foundation to Defendant is at least $2,000,000.00.

44.  The Pledge, Family Foundation Transfers, Petters Transfer, and additional $500,000 in transfers made to Defendant by Petters, the Family Foundation, or other Receivership Individuals, are collectively referred to herein as the "Fraudulent Transfers."

## COUNT I – FRAUDULENT TRANSFERS
### [Actual Fraud - Minn. Stat. §§ 513.44(a)(1) and 513.47]

45. The Receiver realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

46. The Receivership Individuals and the Family Foundation made the Fraudulent Transfers which represent transfers that were made or obligations that were incurred with actual intent to hinder, delay or defraud a creditor to which the Receivership Individuals and the Family Foundation was or became indebted on or after the date of the Fraudulent Transfers.

47. The Fraudulent Transfers were made to or for the benefit of Defendant in furtherance of a fraudulent investment scheme.

48. As a result of the forgoing, the Receiver is entitled to judgment pursuant to Minn. Stat. §§ 513.44(a)(1) and 513.47: (a) avoiding and preserving the Fraudulent Transfers free and clear from any claimed interest of Defendant, (b) directing that the Fraudulent Transfers be set aside, (c) recovering such Fraudulent Transfers or the value thereof from Defendant for the benefit of the Receivership, (d) avoiding any and all obligations that arose out of the Pledge, and (e) recovering interest and attorneys' fees from Defendant.

## COUNT II – FRAUDULENT TRANSFERS
### [Constructive Fraud - Minn. Stat. §§ 513.44(a)(2)(i) and 513.47]

49. The Receiver realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

50. At all times material hereto, the Receivership Individuals and the Family Foundation were engaged in business or transactions, or were about to engage in business or transactions, for which the property remaining with the Receivership Individuals or the Family

Foundation after the Fraudulent Transfers were effectuated constituted unreasonably small capital.

51. The Receivership Individuals and the Family Foundation received less than a reasonably equivalent value in exchange for the Fraudulent Transfers.

52. As a result of the forgoing, the Receiver is entitled to judgment pursuant to Minn. Stat. §§ 513.44(a)(2)(i) and 513.47: (a) avoiding and preserving the Fraudulent Transfers free and clear from any claimed interest of Defendant, (b) directing that the Fraudulent Transfers be set aside, (c) recovering such Fraudulent Transfers or the value thereof from Defendant for the benefit of the Receivership, (d) avoiding any and all obligations that arose out of the Pledge, and (e) recovering interest and attorneys' fees from Defendant.

## COUNT III – FRAUDULENT TRANSFERS
**[Constructive Fraud - Minn. Stat. §§ 513.44(a)(2)(ii) and 513.47]**

53. The Receiver realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

54. At all times material hereto, the Receivership Individuals and the Family Foundation, at the time of the Fraudulent Transfers, intended to incur, believed or reasonably should have believed that they would incur, debts that would be beyond their ability to pay as the debts matured.

55. The Receivership Individuals and the Family Foundation received less than a reasonably equivalent value in exchange for the Fraudulent Transfers.

56. As a result of the forgoing, the Receiver is entitled to judgment pursuant to Minn. Stat. §§ 513.44(a)(2)(ii) and 513.47: (a) avoiding and preserving the Fraudulent Transfers free and clear from any claimed interest of Defendant, (b) directing that the Fraudulent Transfers be set aside, (c) recovering such Fraudulent Transfers or the value thereof from Defendant for the

benefit of the Receivership, (d) avoiding any and all obligations that arose out of the Pledge, and (e) recovering interest and attorneys' fees from Defendant.

### COUNT IV – FRAUDULENT TRANSFERS
### [Constructive Fraud - Minn. Stat. §§ 513.45(a) and 513.47]

57. The Receiver realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

58. At all times material hereto, the Receivership Individuals and the Family Foundation, at the time of the Fraudulent Transfers, were insolvent or, in the alternative, became insolvent as a result of the Fraudulent Transfers.

59. The Receivership Individuals and the Family Foundation received less than a reasonably equivalent value in exchange for the Fraudulent Transfers.

60. As a result of the forgoing, the Receiver is entitled to judgment pursuant to Minn. Stat. §§ 513.45(a) and 513.47: (a) avoiding and preserving the Fraudulent Transfers free and clear from any claimed interest of Defendant, (b) directing that the Fraudulent Transfers be set aside, (c) recovering such Fraudulent Transfers or the value thereof from Defendant for the benefit of the Receivership, (d) avoiding any and all obligations that arose out of the Pledge, and (e) recovering interest and attorneys' fees from Defendant.

### COUNT V – UNJUST ENRICHMENT / EQUITABLE DISGORGEMENT

61. The Receiver realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

62. At all times relevant hereto, the Fraudulent Transfers received by Defendant were part of the Ponzi Scheme and were derived from monies fraudulently obtained by, among others, Petters, PCI and PGW, and from investors or participants in the Ponzi Scheme.

63. The Family Foundation and Receivership Individuals transferred to Defendant monies that were fraudulently obtained by Petters through the Ponzi scheme, and which Petters, the Family Foundation and the Receivership Individuals did not have the right to donate.

64. The Defendant, as the recipient of the Fraudulent Transfers, which were fraudulently obtained proceeds of the Ponzi Scheme, has no rightful or legitimate claim to any monies received from the Receivership Individuals and the Family Foundation.

65. By gifting the Fraudulent Transfers to Defendant, the Receivership Individuals and the Family Foundation conferred a benefit upon the Defendant.

66. By receiving the Fraudulent Transfers, Defendant knowingly received a benefit from the Receivership Individuals and the Family Foundation and provided little or no value in exchange for the benefit.

67. Because the Fraudulent Transfers were proceeds of a fraudulent investment scheme, the Defendant has been unjustly enriched to the detriment of the Receiver appointed for the Receivership Individuals and the Family Foundation.

68. Because Defendant received the Fraudulent Transfers as a result of the fraud committed by Petters, who was a fiduciary to the companies that he owned and operated, the equitable remedy of a constructive trust in the Fraudulent Transfers is warranted.

69. Defendant must, in equity, be required to disgorge all proceeds received through the operation of the Ponzi Scheme, so as to allow the Receiver to distribute pursuant to the Coordination Agreement entered into between, among others, the Receiver and the United States for the benefit of innocent investors and creditors.

70. The Receiver is entitled to judgment against Defendant in the amount of at least $2,000,000.00 and the imposition of a constructive trust in the Fraudulent Transfers.

14

DOCS-#3665137-v2

**WHEREFORE**, the Receiver respectfully requests this Court enter judgment in favor of Plaintiff and against the Defendant as follows:

    A.    On Count I – Fraudulent Transfers (Actual Fraud), pursuant to Minn. Stat. §§ 513.44(a)(1) and 513.47: (a) avoiding and preserving the Fraudulent Transfers free and clear from any claimed interest of Defendant, (b) directing that the Fraudulent Transfers be set aside, (c) recovering such Fraudulent Transfers or the value thereof from Defendant for the benefit of the Receivership, (d) avoiding any and all obligations that arose out of the Pledge, and (e) recovering interest and attorneys' fees from Defendant;

    B.    On Count II – Fraudulent Transfers (Constructive Fraud), pursuant to Minn. Stat. §§ 513.44(a)(2)(i) and 513.47: (a) avoiding and preserving the Fraudulent Transfers free and clear from any claimed interest of Defendant, (b) directing that the Fraudulent Transfers be set aside, (c) recovering the Fraudulent Transfers, or the value thereof, from Defendant for the benefit of the Receivership, (d) avoiding any and all obligations that arose out of the Pledge, and (e) recovering interest and attorneys' fees from Defendant;

    C.    On Count III – Fraudulent Transfers (Constructive Fraud), pursuant to Minn. Stat. §§ 513.44(a)(2)(ii) and 513.47: (a) avoiding and preserving the Fraudulent Transfers free and clear from any claimed interest of Defendant, (b) directing that the Fraudulent Transfers be set aside, (c) recovering the Fraudulent Transfers, or the value thereof, from Defendant for the benefit of the Receivership, (d) avoiding any and all obligations that arose out of the Pledge, and (e) recovering interest and attorneys' fees from Defendant;

D. On Count IV – Fraudulent Transfers (Constructive Fraud), pursuant to Minn. Stat. §§ 513.45(a) and 513.47: (a) avoiding and preserving the Fraudulent Transfers free and clear from any claimed interest of Defendant, (b) directing that the Fraudulent Transfers be set aside, (c) recovering the Fraudulent Transfers, or the value thereof, from Defendant for the benefit of the Receivership, (d) avoiding any and all obligations that arose out of the Pledge, and (e) recovering interest and attorneys' fees from Defendant;

E. Granting judgment against Defendant for unjust enrichment and awarding damages to the Receiver in the amount of $2,000,000.00 plus interest and attorney's fees;

F. Imposing a constructive trust in the Fraudulent Transfers; and

G. Granting the Receiver such other, further and different relief as the Court deems just, proper and equitable.

DATED: April 2, 2012

**LINDQUIST & VENNUM PLLP**

By: /s/ James A. Lodoen
James A. Lodoen (173605)
Mark D. Larsen (318498)
Kirstin D. Kanski (0346676)
Jeffrey D. Smith (0387035)
Adam C. Ballinger (0389058)
4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2274
(612) 371-3211
(612) 371-3207 (facsimile)
www.lindquist.com

**ATTORNEYS FOR
DOUGLAS A. KELLEY,
COURT-APPOINTED RECEIVER**

16

DOCS-#3665137-v2